UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY M. BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-00599-SEB-MJD |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Ashley Bailey requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Child's Insurance Benefits ("CIB") under Title II and re-application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 402(d)(1)(G), 416(i), 423(d), & 1382c. For the reasons set forth below, the Magistrate Judge recommends **AFFIRMING** the decision of the Commissioner.

## I.   Procedural History

Bailey received SSI benefits based on disability as a child. On December 16, 2008, after Bailey turned eighteen, it was determined that Bailey was no longer disabled as of December 16, 2008. The determination was upheld upon reconsideration. On August 8, 2008, Bailey filed an application for CIB alleging an onset of disability of February 20, 1997. The application was denied initially on December 16, 2008 and upon reconsideration on March 12, 2009. Bailey requested a hearing for review of both claims, which was held on October 12, 2010 before

1

Administrative Law Judge Daniel Mages ("ALJ"). The ALJ denied Bailey's claims on December 16, 2010. The Appeals Council denied Bailey's request for review on March 15, 2012, making the ALJ's decision the final decision for purposes of judicial review. Bailey filed her complaint with this Court on May 4, 2012.

## II.     Factual Background

Ashley Bailey received SSI benefits based on disability as a child. The Commissioner found that Bailey had the severe impairment of mild mental retardation, oppositional defiant disorder, and a parent-child relational problem and was disabled as of February 1997. The Commissioner determined that Bailey's disability ended December 2008. Bailey turned eighteen on September 3, 2008, marking the beginning of inquiry.

Bailey received a psychological evaluation from Robert Kissel, Ph.D. in August 2008. She took an IQ test which her results were 73 for Verbal IQ, 78 for Performance IQ, and 74 for Full Scale IQ. Dr. Kissell noted that these results were consistent with Bailey's IQ test taken in February 2008 where she scored a Verbal IQ of 71, Performance IQ of 84, and Full Scale IQ of 75. Dr. Kissell found that Bailey had Borderline Average Intelligence.

After being referred by the Disability Determination Bureau ("DDB" or "state agency"), Bailey was examined by Ceola Berry, Ph.D. in October 2008. Dr. Berry found that Bailey had problems with concentration, short-term memory, mental calculations, abstracting ability, general knowledge and judgment. Dr. Berry also found that Bailey's ability to work would be affected by her past diagnosis of mild/moderate mental retardation and learning disability.

State agency physician Dr. Unversaw completed a Psychiatric Review Technique and a Mental RFC Assessment in December 2008. Dr. Unversaw found that Bailey had Borderline Intellectual Functioning ("BIF") and evaluated that impairment under Listing 12.02 Organic

Mental Disorders. Dr. Unversaw also determined that Bailey had moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.

Dr. Gange with the state agency also completed a Psychiatric Review Technique and a Mental RFC Assessment in February 2009 with substantially the same findings as Dr. Unversaw. Both Dr. Gange and Dr. Unversaw relied on the August 2008 IQ tests and psychological evaluation.

In February 2009, Bailey received treatment at the Open Door Health Center for depression. She was diagnosed with Depressive Disorder Not Otherwise Specified and prescribed Prozac. Prior to this date, she was not taking any medications.

Bailey's next treatment of record was in August 2010 at the Lykins Counseling Clinic. Bailey reported that she stopped using Prozac in 2009 and that she sleeps a lot. She was once again prescribed Prozac. Bailey returned to Lykins in September 2010 and reported that since starting Prozac again, she was not sleeping all the time and was going out to the park with her daughter. Bailey was continued on Prozac as she reported that it was helping her.

In October 2010, Bailey went to Alan Maugherman, Ph.D. for psychological testing and evaluation. Bailey took another IQ where her scores reported at 68 for Verbal IQ, 77 for Performance IQ, and 70 for Full Scale IQ. Dr. Maugherman diagnosed Bailey with Depressive Disorder Not Otherwise Specified and Mild Mental Retardation. Dr. Maugherman also opined that Bailey would have severe difficulties obtaining and maintaining employment, following directions, and working at a normal pace.

### III. <u>**Applicable Standard**</u>

To be eligible for SSI and CIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Specifically, to be entitled to CIB, the claimant must be eighteen years old or older and have a disability that began before attaining the age of twenty-two. 42 U.S.C. §402(d)(1)(G); 20 C.F.R. § 404.350(a)(5).

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks CIB or SSI. However, separate, parallel statutes and regulations exist for CIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.     The ALJ's Decision

Initially, the ALJ determined that Bailey attained age eighteen on September 3, 2008, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age eighteen. Applying the five-step analysis, the ALJ found at step one that Bailey had not engaged in substantial gainful activity since September 3, 2008. At step two, the ALJ found that, since September 3, 2008, Bailey had the following severe impairments: depression, a learning disability, and borderline intellectual functioning.

At step three, the ALJ determined that, since September 3, 2008, Bailey did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that, since September 3, 2008, Bailey had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: no climbing ladders, ropes or scaffolds; frequent fingering and handling; simple one and two step tasks with the ability to attend, concentrate and persist for two hours at a time; no more than superficial interaction with the general public, coworkers or supervisors; and no assembly line work but more goal oriented work.

At step four, the ALJ found that Bailey had no past relevant work. At step five, the ALJ determined that, considering Bailey's age, education, work experience and RFC, there were jobs that existed in the national economy that Bailey could perform. Therefore, the ALJ determined that Bailey was not disabled.

## V.  **Discussion**

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Bailey was not disabled. Bailey raises four arguments on appeal: 1) substantial evidence does not support the ALJ's determination that Bailey's impairments did not meet or medically equal Listing 12.05C; 2) the ALJ committed reversible error by failing to summon a medical expert to determine medical equivalency of a listing; 3) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p; and 4) substantial evidence fails to support the ALJ's step five determination.

### A. Substantial evidence supports the ALJ determination that Bailey's impairments do not equal Listing 12.05C.

The ALJ considered Bailey's impairments under Listings 12.02, 12.04, and 12.05. Listing 12.05 Mental Retardation states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404 Subpt. P App. 1. In evaluating Listing 12.05, the ALJ first determined that Bailey's intellectual functioning is not significantly subaverage. In doing so, the ALJ considered Bailey's IQ tests since age sixteen.[2] Bailey's IQ scores in February 2008 were 71 for Verbal, 84 for Performance, and 75 for Full Scale IQ. [R. at 417.] Her scores in August 2008 were 73 for Verbal, 78 for Performance, and 74 for Full Scale IQ. [*Id.*] Her most recent scores in October

---

[2] Bailey had several IQ test in the record that were conducted on or before the age of eight. While a person's IQ is presumed to remain stable over time, *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006), the regulations dictate that stabilization occurs by age sixteen. 20 C.F.R. Pt. 404 Subpt. P App. 1 Listing 112.00(D)(10)

2010 showed 68 for Verbal, 77 for Performance, and 70 for Full Scale. [R. at 446.] The ALJ relied on the scores in 2008 and substantial evidence supports this reliance. Dr. Kissel's Psychological Evaluation in August 2008 noted that those scores were in line with the February 2008 results. The scores from 2008 are not in the requisite range for purposes of 12.05 While the October 2010 test did indicate Full Scale IQ of 70 and a Verbal IQ of 68, Dr. Maughermann's own analysis indicated some irregularities, namely that Bailey "exhibited highly inconsistent performance during the first subtest of IQ testing, often missing very easy items, but getting more difficult items correct." [R. at 446.] Although Dr. Maughermann insisted that the test was nonetheless valid, the other tests do not suggest such an inconsistency. Thus, it was neither unreasonable nor improper for the ALJ to favor the first two tests over the final test.

Even if the ALJ did rely on the most recent scores, the burden remains on Bailey to demonstrate that her impairment(s) meet or equal *all* of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (emphasis added). While it is clear that Bailey's impairment manifested prior to age 22 – as demonstrated through a previous award of SSI benefits based on mental retardation – Bailey failed to show that all the requirements in subsections A, B, C, or D were satisfied. Bailey argues that her impairments meet Listing 12.05C. However, she does not argue or establish that she has a physical or other mental impairment imposing an additional and significant work-related limitation of function. Assuming Bailey's depression qualified as another mental impairment, the record demonstrates that the depression does not impose significant work-related limitations based on increased level of activity when regularly taking her prescribed medication. [R. at 441.]

Looking to the other subsections, Bailey does not argue, and there is nothing in the record to indicate, that Bailey is dependent upon others for personal needs as required for Listing

8

12.05A; none of her IQ scores were at or below 59 as required for Listing 12.05B; and Plaintiff does not challenge the state agency physicians' or the ALJ's finding that Bailey did not have at least two areas of marked limitations or repeated episodes of decompensation as required by Listing 12.05D.

Because Bailey failed to show that her impairments met or equaled Listing 12.05, substantial evidence supports the ALJ's finding that Bailey's impairments did not meet or equal Listing 12.05.

### B. The ALJ was not required to summon a medical expert.

Next, Bailey argues that the ALJ was required to obtain an updated medical opinion on the issue of medical equivalency because the state agency physicians did not consider all the evidence in the record, specifically the psychological evaluation conducted by Dr. Maugherman in 2010. An updated medical opinion is required when additional medical evidence is received that, in the opinion of the ALJ, could change the state agency physician's finding on the issue of medical equivalency. SSR 96-6p, 1996 WL 374180 (July 2, 1996). The ALJ noted discrepancies in Dr. Maugherman's psychological evaluation and thereby explained his conclusion that Dr. Maugherman's opinions would not have altered the state agency physician's finding on the issue of medical equivalency. Therefore, the ALJ was not required to consult an additional medical expert.

### C. Substantial evidence supports the ALJ's credibility determination.

Bailey next argues that the ALJ erred in his credibility determination. She contends that the ALJ never mentioned SSR 96-7p and failed to make any accurate findings concerning the seven factors in the Ruling. This argument lacks merit. Not only did the ALJ mention SSR 96-7p, [R. at 19], but the ALJ spent at least a paragraph specifically on each of the seven factors. [R.

9

at 20, 21, 24, 25.] Bailey also argues that the ALJ ignored or rejected Bailey's GAF scores. The ALJ discussed Bailey's GAF scores when making his determination on Bailey's credibility. [R. at 27.] However, nowhere in the regulations is it required that an ALJ base his decision entirely on a person's GAF score. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The remainder of Bailey's argument is waived as boilerplate language unsupported by record evidence typically found in counsel for the Plaintiff's briefs. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

### D. Substantial evidence supports the ALJ's step five determination.

Finally, Bailey argues that the ALJ posed an incorrect hypothetical by not incorporating the findings of Dr. Maugherman's 2010 psychological evaluation. As discussed above, the ALJ did not err in finding that Dr. Maugherman's psychological evaluation was inconsistent with the record evidence. Therefore, the hypothetical posed was not in error and substantial evidence supports the ALJ's step five determination.

### VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Bailey is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:     07/26/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov